UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CRISTINA GRISWOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-01842 JAR |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Cristina Griswold's application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.

**Background**

Plaintiff applied for supplemental security income on October 3, 2016, alleging disability as of October 3, 2016,[1] due to a variety of mental and physical impairments, including bipolar disorder, depression, carpal tunnel syndrome, a ganglion cyst, high blood pressure, and a sleep disorder. After her application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on July 26, 2018, the ALJ issued a written decision on  October 25, 2018, denying Plaintiff's application. Plaintiff's

---

[1] Plaintiff also filed an application for child's insurance benefits on August 26, 2016, alleging disability as of her date of birth on September 1, 1977. (Tr. 21, 223). Plaintiff amended her alleged onset date to October 3, 2016, effectively eliminating her claim for child's disability benefits, and Plaintiff, through her representative, withdrew her request for hearing as it pertains to the application for child's disability benefits on July 26, 2018. (Tr. 21, 257).

1

request for review by the Appeals Council was denied on April 22, 2019. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## I.      Facts

The Court adopts Plaintiff's Statement of Facts (Doc. No. 12-1) to the extent they are admitted by the Commissioner (Doc. No. 15-1). The Court also adopts Defendant's Statement of Additional Facts. (Id.). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## II.     Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court

might have reached a different conclusion had it been the finder of fact in the first instance. Id.

The Court defers heavily to the findings and conclusions of the Social Security Administration.

Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738

(8th Cir. 2010)).

      To determine whether the ALJ's final decision is supported by substantial evidence, the

Court is required to review the administrative record as a whole and to consider:

    (1) The findings of credibility made by the ALJ;

    (2) The education, background, work history, and age of the claimant;

    (3) The medical evidence given by the claimant's treating physicians;

    (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

    (5) The corroboration by third parties of the claimant's physical impairment;

    (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

    (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980);

see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

      The Social Security Act defines as disabled a person who is "unable to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment

must be "of such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained

4

work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

### III.   Decision of the ALJ

The ALJ found Plaintiff had the severe impairments of bilateral carpal tunnel syndrome, left ganglion cyst, and a mood disorder not otherwise specified, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24-25).

5

After considering the entire record, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR 416.967(b), except that she can frequently handle, finger, and feel with the bilateral upper extremities. The ALJ further found Plaintiff can understand and remember simple instructions, and attend to and carry out routine and repetitive tasks, but not at a production rate pace (e.g., assembly line work). She can have occasional interaction with the public and coworkers and superficial interaction with others, meaning she is precluded from tandem tasks or tasks involving arbitration, negotiation, conflict resolution or responsibility for the safety or welfare of others. She can have infrequent changes in an otherwise static work environment. (Tr. 27).

Based on the testimony of the vocational expert ("VE"), the ALJ concluded, after considering Plaintiff's age, education, work experience and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as light, unskilled, SVP code 2, janitorial, Dictionary of Occupational Titles (DOT) No. 323.687-014, with approximately 800,000 jobs nationally, and retail type positions in a self-serve store, DOT No. 299.677-010, with approximately 1.5 million jobs nationally (stocking with proximity but no interaction), as well as fast food crew, DOT No. 311.472-010, with approximately 200,000 jobs nationally (number reduced to certain occupations such as bussing and clean-up). (Tr. 33). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 34).

### IV.    Discussion

In her appeal of the ALJ's decision, Plaintiff argues the ALJ erred in determining her RFC by failing to properly evaluate her physical limitations. Notably, Plaintiff takes no issue with the ALJ's assessment of her mental limitations in the RFC. With respect to her physical limitations, Plaintiff contends there is no medical evidence of record supporting the ALJ's

6

conclusion that she could frequently use her bilateral upper extremities to handle, finger and feel. Plaintiff also argues the ALJ failed in his duty to develop the record.

RFC is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments. See 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ determines a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)); see also Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012). The ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports;" instead, the RFC assessment should include a narrative discussion demonstrating how the evidence logically supports the ALJ's conclusions. Strongson, 361 F.3d at 1070. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." See Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). However, there is no requirement than an RFC finding be supported by a specific medical opinion. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). See also Myers v. Colvin, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); Perks, 687 F.3d at 1092-93 (same); Beatty v. Saul, No. 2:18 CV 22 ACL, 2019 WL 4243087, at *9 (E.D. Mo. Sept. 6, 2019). In the absence of medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." Johnson v. Astrue, 628 F.3d 991, 995 (8th Cir. 2011).

**Medical records**

In determining Plaintiff's RFC, the ALJ first noted the lack of objective medical evidence supporting more than light level restrictions given Plaintiff's conservative treatment history with some oral medication and use of wrist braces, but without any indications of anything more than mild abnormalities. (Tr. 28-29). The ALJ acknowledged Plaintiff's diagnoses of bilateral carpal tunnel syndrome and a left ganglion cyst dating prior to her alleged onset date of disability, and treatment for these conditions with wrist splints and medications, including Toradol and Naproxen. (Tr. 28, 384-87, 449-51, 665-67, 951-59). Plaintiff was referred to an orthopedic surgeon for possible ganglion cyst removal in July 2017 (Tr. 29, 956-59); however, there is no evidence in the record that Plaintiff pursued this.

On October 26, 2016, just after the amended alleged onset date, Plaintiff returned to her primary care provider complaining of burning, numbness, and tingling in her hands and elbows. (Tr. 946). She was reportedly scheduled for a neurological examination, using wrist splints, and taking Gabapentin. (Tr. 949). As of January 2017, Plaintiff had not yet procured an elbow sleeve recommended by the neurologist for her ulnar neuropathy. (Tr. 951-54).

In December 2017, Plaintiff was referred to an orthopedic surgeon for complaints of elbow and wrist pain, but left the appointment prior to being seen due to time constraints. (Tr. 961). At that time, Plaintiff was not taking Gabapentin. (Id.). Plaintiff was directed to reschedule her orthopedic appointment (Tr. 964), but again there is no evidence in the record that she did so. Plaintiff also testified she was not receiving any specific treatment for carpal tunnel syndrome or her left ganglion cyst. (Tr. 29, 56-57, 299). In addition, Plaintiff's treatment records regularly noted normal musculoskeletal examinations, including normal strength and ranges of motion (Tr. 841, 844, 847, 850, 907, 922, 932-33, 941), as well as normal activity levels (Tr. 770, 778, 786, 792, 800, 805, 814, 822, 828, 836, 857, 865, 873, 882).

8

The ALJ properly considered Plaintiff's relatively conservative treatment history. See Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015); Wright v. Colvin, 789 F.3d 847, 854 (8th Cir. 2015); Cypress v. Colvin, 807 F.3d 948, 951 (8th Cir. 2015) (citing Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (Plaintiff refused more invasive medical procedures such as steroid shots and carpal tunnel release surgery; the failure to seek regular and available medical treatment undermines a claim of disabling pain). Plaintiff acknowledges that her treatment throughout the alleged period has been conservative, but notes that referrals to specialists have been provided and suggests that her mental impairment may have played a role in her inability to attend the referrals and not an indication of the severity of the physical symptoms themselves.

Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized that psychological and emotional difficulties may deprive a claimant of "the rationality to decide whether to continue treatment or medication." Pate-Fires v. Astrue, 564 F.3d 935, 945-46 (8th Cir. 2009) (citing cases). The Pate-Fires court held that where there is overwhelming evidence that treatment noncompliance is a medically determinable symptom of a mental impairment, such that it is a manifestation of the impairment, noncompliance cannot be the basis for finding a claimant not disabled. Id. at 946-47. Here, Plaintiff's mental impairments fail to meet the threshold set by the Pate-Fires court because she does not demonstrate that her treatment noncompliance was a medically determinable symptom such that it is a manifestation of the impairment. Id. Although there is some evidence of a depressed and irritable mood, Plaintiff's mental status examinations have consistently been essentially normal with no persistent clinical signs of psychological impairment and at no time deficits of concentration or memory. (Tr. 29, 770-71, 778, 786, 792, 798-808, 836, 841, 844, 857, 867).

**Medical opinions**

The record contains no opinion from a treating or consulting examining physician regarding the functional limitations of Plaintiff's physical impairments; however, in the absence of medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." Johnson v. Astrue, 628 F.3d 991, 995 (8th Cir. 2011). As discussed above, based on Plaintiff's generally unremarkable physical examinations, conservative treatment measures, and lack of nerve conduction/EMG testing to determine severity, the ALJ found Plaintiff capable of performing a range of light work with additional limitations on manipulation and production rate. (Tr. 27, 29).

**Plaintiff's subjective complaints**

"Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). This includes evidence pertaining to "the claimant's daily activities"; "the duration, frequency and intensity of the pain"; "precipitating and aggravating factors"; "dosage, effectiveness and side effects of medication"; and "functional restrictions." Polaski, 739 F.2d at 1322. Of course, "[t]he ALJ need not explicitly discuss each Polaski factor. It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004) (internal citations omitted). "The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole. If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we

will defer to its judgment even if every factor is not discussed in depth." <u>Perkins</u>, 648 F.3d at 900 (quotations and citations omitted).

Plaintiff reported problems lifting, reaching, and using her hands. (Tr. 55). At the July 2018 hearing, she testified she had carpal tunnel with constant numbness and tingling and that she dropped things. (<u>Id</u>.). It was also her testimony that she was sometimes able to carry groceries if they were not too heavy, including a gallon of milk. (<u>Id</u>.). Plaintiff stated she was not currently receiving treatment for carpal tunnel or a ganglion cyst, but had been prescribed some braces that she wore when she is really in pain or when her arms are shaking, i.e., about three to four times a week. (Tr. 56-57). Plaintiff testified she stopped taking Gabapentin because it made her sick. (Tr. 57). Plaintiff also stated she shares in most household chores and has no difficulty with hygiene and grooming, and has no difficulty buttoning a shirt or pants or tying her shoes. (Tr. 57-58).

In discounting Plaintiff's subjective complaints, the ALJ noted that she appeared at the hearing without braces and moved her arms, hands, and fingers without noticeable difficulty. (Tr. 29, 56-57). An ALJ's personal observations of the claimant's demeanor during the hearing is proper in making credibility determinations. <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1147-48 (8th Cir. 2001), citing <u>Smith v. Shalala</u>, 987 F.2d 1371, 1375 (8th Cir. 1993); <u>Kirby v. Astrue</u>, 500 F.3d 705, 708 (8th Cir. 2007) ("Dr. Arora stated that Kirby's tremors were '[m]inimal,' which was consistent with the ALJ's observation that the tremors were not noticeable during the hearing.").

The ALJ also noted the lack of objective medical evidence to support Plaintiff's claimed difficulty lifting a gallon of milk and dropping things, as well as adverse side effects of any medication. Instead, treatment notes document that Plaintiff's condition has remained static and that she has experienced some symptom improvement and stabilization when medication is taken as prescribed. An ALJ may determine that "subjective pain complaints are not credible in

light of objective medical evidence to the contrary." Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

Lastly, the evidence showed that Plaintiff shopped, prepared simple meals, performed household chores, and performed basic hygiene and grooming. See Vance v. Berryhill, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility").

For these reasons, the ALJ determined that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.

**Failure to develop the record**

Plaintiff argues the ALJ failed to develop the record fully and fairly. Specifically, Plaintiff maintains there is no medical evidence of record supporting the ALJ's RFC for light work except that she could frequently use her bilateral upper extremities to handle, finger and feel. Plaintiff asserts the ALJ should have requested additional information to clarify the severity of her physical conditions but instead drew his own inferences and conclusions without explaining how they are supported by the medical evidence.

"[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994)); see also McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011). While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not

required to seek additional clarifying medical evidence unless a crucial issue is undeveloped. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005).

The Court finds the record as a whole provided a sufficient basis for the ALJ's decision and there was no indication in the record that additional medical records were necessary. The record included objective medical evidence from which the ALJ supported his RFC assessment. See Hensley, 829 F.3d at 932 ("medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's [RFC] findings."). The ALJ properly determined Plaintiff's RFC based on his consideration of the evidence in the record as a whole. See 20 C.F.R. § 404.1545(a)(3) (RFC is assessed "based on all of the relevant medical and other evidence" of record). In particular, the ALJ considered Plaintiff's subjective statements but found the objective medical evidence did not support her allegations of disability. See Hamilton v. Astrue, 518 F.3d 607, 613 (8th Cir. 2008) (ALJ's credibility determination was proper where he noted, among other things, that plaintiff's testimony was inconsistent with the evidence of record). The Court is therefore not persuaded by Plaintiff's argument that the ALJ failed to fulfill his duty to develop the record fully and fairly.

**Vocational expert hypothetical**

Because the hypothetical question posed to the VE included those impairments the ALJ found substantially supported by the record as a whole and excluded those he properly disregarded, the VE's testimony that Plaintiff could perform work existing in significant numbers, is substantial evidence in support of the ALJ's determination. See Gieseke v. Colvin, 770 F.3d 1186, 1189 (8th Cir. 2014); Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011); Gragg v. Astrue, 615 F.3d 932, 941 (8th Cir. 2010).

13

## V.      Conclusion

Based on substantial evidence on the record as a whole, the Court finds and concludes that the RFC reasonably accommodated Plaintiff's carpal tunnel diagnosis by concluding that she could only perform light work with frequent handling, fingering, and feeling with the bilateral upper extremities. As noted above, Plaintiff did not challenge the ALJ's RFC determination as it related to her mental impairment.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** without prejudice.

A separate Judgment will accompany this Memorandum and Order.

Dated this 10th day of July, 2020.

_____

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

14